Richard C. and Sally G. Conole v. Commissioner.
Conole v. Commissioner
Docket No. 4960-67.
United States Tax Court
T.C. Memo 1971-112; 1971 Tax Ct. Memo LEXIS 220; 30 T.C.M. (CCH) 480; T.C.M. (RIA) 71111; May 18, 1971, Filed *220 Held: (1) The lease of property by petitioner to a corporation was a valid lease and not a sham. Held: (2) Property leased by petitioner to a corporation was utilized for both business and the personal activities of the petitioner. Allocation determined: (a) With respect to each of the years 1960 and 1961, petitioner is chargeable with income to the extent of an allocable portion of the total cost incurred by the corporation in the operation of the property. (b) With respect to each of the years 1960 and 1961, petitioner, as lessor of the facility, properly included as rental income the sums paid to him by the corporation under the lease and properly deducted depreciation expenses. (c) With respect to 1961, petitioner is entitled to a deduction to the extent of an allocable portion of food and beverage expenses paid for by him and reimbursed by the corporation. F. Cleveland Hedrick, Jr., Fred S. Gilbert, Jr., and Carl A. Nordberg, Jr., 1001 Connecticut Ave., N.W., Washington, D.C., for the petitioners. James A. McNabb, Jr., and John J. O'Toole, for the respondent. QUEALY
Memorandum Findings of Fact and Opinion QUEALY, Judge: The respondent determined *221 deficiencies in the Federal income tax due from petitioners as follows: Year
Deficiency
1960
$379.09
1961
619.71
Respondent concedes the issue of educational expenses for 1960 and 1961. The remaining issues presented for decision are as follows: (1) Whether petitioners' income should include amounts expended by a corporation, 50 percent of the stock of which was owned by the father of petitioner-husband, for improvements to and operating expenses of a house owned by petitioners and leased to such corporation. (2) Whether petitioners are entitled to deductions for depreciation on a house owned by them and leased to a corporation, 50 percent of the stock of which was owned by the father of petitioner-husband. (3) Whether petitioners are entitled to deductions for food purchased by them for use at a house owned by them and leased to a corporation, 50 percent of the stock of which was owned by the father of petitioner-husband. Findings of Fact Some of the facts have been stipulated. The stipulation of facts and exhibits attached thereto are incorporated herein by this reference. Richard C. Conole and Sally G. Conole, THE PETITIONERS, ARE HUSBAND AND *222 WIFE. Joint Federal income tax returns for the years 1960 and 1961 were filed by the petitioners [1] with the district director of internal revenue at Philadelphia, Pennsylvania. At the time the petition herein was filed, the petitioners' legal residence was in Haverford, Pennsylvania. Petitioner Richard C. Conole (hereinafter referred to as "petitioner") is the son of Clement V. Conole, petitioner in docket No. 4916-67. During the years in issue, petitioner held various executive positions with Whiting Paper Co. (hereinafter referred to as "Whiting"). During the first half of 1960, petitioner was employed as secretary of Whiting. He then became president of Whiting and continued to occupy that position during the remainder of the years in issue. Petitioner owned no stock in Whiting. All stock of Whiting was owned equally by petitioner's father, Clement V. Conole, and Mr. L. S. Crandall (hereinafter referred to as "Crandall"). During the years in question, Whiting leased a large stone house at Skytop, Pennsylvania from petitioner's *223 father, Clement V. Conole (hereinafter referred to as "Conole"). In June of 1960, the petitioner acquired a house at Skytop, Pennsylvania. The purchase price was $29,750 with $7,500 of that amount allocated to the purchase of the furniture and $22,250 allocated to the purchase of the house. The house contained 15 rooms, 5 of which were bedrooms. Petitioner further testified that the house had a useful life of 10 years. On this basis, petitioner claimed depreciation on this property in 1960 and 1961 using the straight-line method. In June of 1960, immediately after the acquisition of this house, the petitioner leased the property to Whiting for a period of 5 years at an annual rental of $6,000 per year. The lease contained a 30-day termination clause. The lease was terminated in June of 1961, at which time the petitioner took up residence in the house. Petitioner purchased the house instead of Whiting because Skytop Lodges, Inc. (the corporation from which petitioner purchased the house) prohibited corporate ownership of property in the area. Petitioner indicated that his wife had no part in the acquisition of the house. Petitioner claimed that the property was used by Whiting *224 to provide a facility for the overflow of people coming to Skytop on Whiting business who could not be accommodated at the other Skytop facility leased by Whiting. Petitioner also claimed that the facility was used on 35 different occasions during the year of the lease (June 1960 to June 1961) for corporate business meetings, that on 15 other occasions customers or prospective customers of the company were entertained at the facility, and that the facility was used by Whiting approximately 20 other times when the petitioner was not present. Petitioner stated that he occupied the house by himself on only one occasion during the year of the lease. Petitioner received payments from Whiting with respect to the property designated in the lease in the following amounts: Year
Amount
1960
$3,250.00
1961
2,750.00
During 1961, Whiting expended the amount of $878.46 in connection with the Skytop facility which it leased from petitioner. This sum represented payments for the installation of a bar facility, other paneling and shelves, and operating expenses such as heat, light, and water as follows: Expense
Amount
Installation of a bar facility
$108.00
Miscellaneous expenses * 770.46
Total
$878.46
*225 The respondent seeks to include this amount of $878.46 in petitioner's income claiming that the corporation has paid the personal expenses of the petitioner. Petitioner claimed deductions for depreciation on the Skytop facility in 1960 and 1961 in the respective amounts of $885.60 and $754.00. The respondent has denied these deductions. In 1961, the petitioner also claimed, and the respondent denied, a deduction in the amount of $96.15 for food purchased by him for use at the facility. Petitioner was reimbursed by Whiting for his expenditures in this regard, and this food was partially consumed in the entertainment of business guests. Ultimate Findings of Fact (1) The lease of property by petitioner to a corporation was a valid lease and not a sham. (2) The property leased by petitioner to a corporation was utilized 60 percent for business and 40 percent for the personal activities of the petitioner. Opinion In June 1960, petitioner purchased a house at Skytop, Pennsylvania. Immediately after the purchase of the facility, petitioner executed a lease for the house with Whiting Paper Co., 50 percent of *226 the outstanding stock of which was owned by petitioner's father. During the years in question, petitioner was either secretary or president of Whiting, and his father was president, chairman of the board, and chief sales officer. The house which petitioner purchased at Skytop was located in close proximity to another house which petitioner's father had purchased and leased to Whiting's predecessor (the lease having been assigned to Whiting upon the merger of the two organizations) the previous year. As in the case of the lease between petitioner's father and Whiting, petitioner's lease was for a 5-year period with provision for termination by either party on 30 days' notice. The lease was, in fact, terminated by the petitioner at the end of 1 year. In 1961, Whiting paid certain operating expenses of the facility and made improvements to the house. Petitioner claimed deductions for depreciation on this house in 1960 and 1961, and in 1961, he also claimed a deduction for food purchased for use at the house. Petitioner argues that the facility was utilized solely by Whiting for purely corporate business and that neither he nor his family ever used the facility for personal or family *227 recreation or entertainment. On this basis, petitioner concludes that the operating expenses and improvements paid for by Whiting were not income to him and that he is entitled to the depreciation expenses claimed in 1960 and 1961 and to the 1961 food expense. Respondent contends that the lease with Whiting was a sham and that the Skytop facility was petitioner's personal recreation and entertainment facility. Consequently, he argues that the expenses associated with the house are not deductible and that expenses paid by Whiting to improve or operate the property were personal expenses of the petitioner and that the payment of such expenses by Whiting constituted income to him. After a careful consideration of all the facts and circumstances of this case, we must conclude that neither petitioner's nor respondent's position can be sustained. We have found that the lease of the property by the petitioner to the corporation was a valid lease and not a sham, and giving full effect to the testimony of petitioner and considering our findings and determinations in docket No. 4916-67 ( ), with respect to the utilization of the Skytop facility *228 leased to Whiting by petitioner's father, it is certain that the facility owned by petitioner, which he indicated was leased to Whiting to take care of the overflow from his father's facility, was, in part, utilized for business purposes. However, we are certain from petitioner's testimony that in his mind the distinction between personal and business utilization was not clearly defined, and he has not set forth the objective criteria which he used to determine which activities were business and which were personal. In these circumstances, there can be no clear-cut distinction between petitioner's personal and social activities and his business activities, and it cannot be said that the acquisition and use of this property was solely for business purposes for the benefit of the corporation. Expenditures such as those made with respect to the facility herein involved can serve a dual role of promoting and conducting a business and providing payment of personal living expenses of an individual. Where such expenditures do serve such a dual purpose, allocation becomes appropriate and necessary. (C.A. 5, 1960), affirmed per curiam *229 ; . Generally, the allocation is determined on the basis of a comparative analysis between the personal and business utilization of the property. In situations where this comparison does not result in a clear and exact measurement of the ratio of time and/or space devoted to business as compared with total use, allocation is still proper and can be made on the basis of an analysis of all the facts and circumstances of the case. In determining the allocation to be made, we are aware of the heavy burden of proof placed upon the petitioner to show that the expenditures and deductions in question here were intimately related to the conduct of Whiting's business. , modified (C.A. 8, 1956). We have also considered that as a consequence of this burden of proof the allocation may necessarily bear heavily against the petitioner. (C.A. 2, 1930), affirming in part . Nevertheless, the allocation *230 should still be made. ; ; Accordingly, we have carefully studied and analyzed the entire record, and it is our conclusion that the activities and expenses attributable to this property should be allocated on a basis similar to that established in docket No. 4916-67 involving the facility owned by petitioner's father. Hence, the expenses and deductions should properly be classified as 60 percent business and 40 percent personal. In arriving at this determination, we have considered petitioner's testimony, his apparent confusion as to the distinction between personal and business activities, the relationship of the petitioner's facility at Skytop to that of his father, the relationship between the type of activity carried on at petitioner's facility and that of his father, and petitioner's relationship to the operation of the facility. Having made this allocation, it is still necessary to determine the amount to charge to the income of the petitioner for the cost of his personal utilization of the facility which was borne by the corporation and to *231 determine the amount and extent to which he should be allowed to take the deductions attributable to the property. In making these determinations, we adopt the same method as applied in docket No. 4916-67. We emphasize that in so doing, we accept the validity of the lease between petitioner and Whiting having found it not to be a sham. The following method sets forth our determination and provides for the proper disposition of each of the issues with respect to the Skytop facility owned by the petitioner in accordance with our allocation: (1) In each of the years 1960 and 1961, the amounts received by petitioner from Whiting with respect to the property designated in the lease are to be treated as rental income to the petitioner less the deductions claimed for depreciation in those years. The resulting net rental income for each of the years in question is as follows: Gross
Net
Rental
Rental
Year
Income
Depreciation
Income
1960
$3,250.00
$885.60
$2,364.40
1961
2,750.00
754.00
1,996.00
(2) In each of the years in question, the petitioner is chargeable with the value of the benefit he derived from the use of the Cresco facility for *232 his personal activities. We have determined that 40 percent of the use of the facility was for petitioner's personal activities. In the absence of any other suitable basis of measurement, we deem that the total cost of the facility to Whiting is an appropriate basis for the measurement of the value of the benefit derived. Therefore, 40 percent of the total cost of the facility to Whiting is the value of the benefit which the petitioner derived from the use of the facility for his personal activities. Thus, in each of the years in question, the total deductible costs or expenses incurred by Whiting in connection with the rental and operation of the property leased from petitioner is to be determined. This includes rent paid by Whiting to the petitioner, amortization of the leasehold improvements made by Whiting, and operating expenses paid directly by Whiting. Then in each of the years in question, 40 percent of this total cost of operation is to be allocated to the petitioner. The result is the amount which is to be treated as a personal expense of the petitioner paid for by Whiting and which is therefore income to the petitioner. The application of this formula and the amount *233 of income to petitioner derived from is application can be seen in the following: Year and Amount
Item
1960
1961
Rent
$3,250.00
$2,750.00
Miscellaneous Expenses
770.46
Amortization of Leasehold
Improvements
1961 Improvements
11.11
Total Cost to Whiting
$3,250.00
3,531.57
Amount of Total Cost
to Whiting Which is Income
to the Petitioner (40 per-
cent of the Total Cost)
$1,300.00
$1,412.63
(3) In addition, with respect to 1961, petitioner is to be allowed 60 percent of the claimed deduction of $96.15 for his expenditures for food and beverages (reimbursed by Whiting) provided for consumption at the facility. The amount of his deduction in this regard is $57.69. Decision will be entered under Rule 50. Footnotes
1. Sally G. Conole is a party to this proceeding only by virtue of the joint return filed by the petitioners for the taxable years in question.↩
*. This included charges for local property taxes of $250.00.↩